UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MOE TORABI and SHAHLA TORABI                                                                PLAINTIFFS

v.                                             No. 5:19-CV-05206

STATE FARM FIRE AND CASUALTY
COMPANY                                                                                      DEFENDANT

**OPINION AND ORDER**

Before the Court are two motions for summary judgment. Defendant State Farm Fire and Casualty Company ("State Farm") filed a motion (Doc. 18) for summary judgment, a brief in support (Doc. 19), and a statement of facts (Doc. 17). Plaintiffs Moe and Shahla Torabi filed a response (Doc. 23) in opposition and a statement of facts (Doc. 24). The Torabis also filed a cross motion (Doc. 25) for summary judgment, a brief in support (Doc. 27), and a statement of facts (Doc. 26). State Farm filed a reply (Doc. 31), and accompanying statement of facts (Doc. 34), to the Torabis' response that also served as a response to the Torabis' cross motion for summary judgment. Finally, the Torabis filed a reply (Doc. 36) to State Farm's response. For the reasons set forth below, State Farm's motion for summary judgment will be granted. The Torabis' cross motion for summary judgment will be denied.

**I.     Background**

Moe and Shahla Torabi own a house in Springdale, Arkansas that they use as a rental property. The Torabis purchased a Rental Dwelling Policy from State Farm that covered this property from October 2017 to October 2018. In December of 2017, the tenants staying at the Torabis' rental property notified the Torabis that water was flowing out from the second-floor bathroom into the upstairs hallway and first-floor living area. The Torabis sent a plumber to the property who reported that a water supply line on the second floor had busted. The plumber

1

repaired the damaged line and informed the Torabis that all standing water had been removed from the property. The Torabis' property manager also inspected the property and confirmed that the floors were dry. After the tenants moved out, the Torabis discovered loose ceramic tiles in the kitchen. A handyman was hired to replace the tiles, but he could not place new tiles in the kitchen due to standing water under the flooring. The Torabis reported the standing water to their State Farm agent who recommended they inspect the entire floor to ensure that any standing water would not lead to mold. The standing water was also found in the living room where the floors were covered in a wood laminate, and the Torabis hired a flooring company to remove the wood laminate and inspect the first floor. The flooring company discovered extensive mold damage after removing the flooring and exposing the joints, crawl space, and foundation below.

After discovering the mold damage underneath the flooring, the Torabis made a claim with State Farm under the Rental Dwelling Policy. While the flooring repairs were ongoing, workers at the property noticed the air conditioning unit was not working, and the workers speculated that a blocked condensation line was the cause. When Mr. Torabi filed the floor claim to State Farm, he stated that the blocked condensation line could have caused the standing water. A State Farm adjuster inspected the property and determined that the claim was not covered for several reasons. In the letter denying the claim, the adjuster cited the following policy exclusions: an exclusion for "continuous or repeated seepage or leakage of water" from an air conditioning unit, an exclusion for deterioration, an exclusion for rust, mold, or wet or dry rot, and an exclusion for losses which would not have occurred but for neglect. (Doc. 5, pp. 5-6).

On October 13, 2019, the Torabis filed a complaint in the Circuit Court of Washington County, Arkansas against State Farm asserting a claim for breach of insurance contract. State Farm filed a notice of removal to this Court on October 30, 2019. Additionally, the Torabis filed

2

a separate case in the Circuit Court of Washington County, Arkansas against State Farm asserting claims for breach of insurance contract and bad faith arising out of damages to the Torabis' rental property caused by fallen trees. State Farm also filed a notice of removal in this Court. On January 8, 2020, the Court entered an order consolidating the two cases—Nos. 5:19-CV-05206; 5:19-CV-05227—because the cases involved the same defendants, insurance policy, and property. Although the cases have been consolidated, the pending motions for summary judgment only address Case No. 5:19-CV-05206.

## II. Analysis

### A. Standard of Review

After viewing the record in the light most favorable to the nonmoving party and granting all reasonable factual inferences in the nonmovant's favor, a motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *Haggenmiller v. ABM Parking Serv., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "While the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Haggenmiller*, 837 F.3d at 884 (quotations omitted). The same standard applies to cross-motions for summary judgment, with each party's motion reviewed in its own right and the parties "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983).

A federal district court sitting in diversity applies its forum state's substantive law. *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007). "The provisions of an insurance contract 'are to be interpreted by the court in the plain and ordinary meaning of the terms and cannot be construed to contain a different meaning.'" *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 962 S.W.2d 735, 739–40 (Ark. 1998) (quoting *Horn v. Imperial Cas. & Indem. Co.*, 636 S.W.2d 302, 303 (Ark. 1982)). "The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid." *Id.* at 750 (quoting *S. Farm Bureau Cas. Ins. Co. v. Williams*, 543 S.W.2d 467, 470 (Ark. 1976)).

If coverage for a loss exists, it must then be determined if exclusionary language within the policy eliminates the coverage. *See Castaneda v. Progressive Classic Ins. Co.*, 166 S.W.3d 556, 560-61 (Ark. 2004) (citing *Norris v. State Farm Fire & Cas. Co.*, 16 S.W.3d 242 (Ark. 2000)). Exclusions must be expressed in clear and unambiguous language. *See id.* If language is unambiguous, the plain language of the policy will be used. *Id.* (citing *Elam v. First Unum Life Ins. Co.*, 57 S.W.3d 165 (Ark. 2001)). Language is ambiguous if "there is a doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Harasyn v. St. Paul Guardian Ins. Co.*, 75 S.W.3d 696 (Ark. 2002). When language is ambiguous, the policy will be construed "liberally in favor of the insured and strictly against the insurer." *Castaneda*, 166 S.W.3d at 560–61.

State Farm argues in its motion for summary judgment that mold, rot, and deterioration damage is completely excluded by the Rental Dwelling Policy. State Farm further argues that "all of the damage [the Torabis] claim in the first insurance claim was mold, rot, or deterioration." (Doc. 19, p. 20). In their cross motion for summary judgment, the Torabis contend that the mold,

4

rot, and deterioration damages at issue are covered under the Rental Dwelling Policy. The Torabis do not contest that all of the claimed damages are either mold, rot, or deterioration.[1]

### B. Mold Exclusion

Both parties' briefing notes that the mold provision is modified by an endorsement. Mold was originally listed in exclusion item 1 j. with rust and wet or dry rot, but the endorsement has the effect of moving mold to item 2. Item 2 states

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.

(Doc. 3, p. 19). Endorsement FE-5722 removed mold from item 1 of Losses Not Insured to item 2 and adds the following to item 2:

> Fungus, including the growth, proliferation, spread or presence of fungus, and including: (1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by fungus; (2) any remediation of fungus, including the cost or expense to: (a) remove or clean the fungus from covered property or to repair, restore or replace that property; (b) tear out and replace any part of the building or other property as needed to gain access to the fungus; (c) contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the fungus; or (d) remove any property to protect it from the presence of or exposure to fungus; (3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of fungus, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

(Doc. 3, p. 19). The Torabis argue that moving mold to item 2 narrows the exclusion because it only excludes losses that occurred because of mold. They argue that the mold losses are covered here because "the loss was caused by a sudden and accidental water leak" making the mold "the

---

[1] Both Mr. and Mrs. Torabi stated in their respective depositions that all of the claimed damages in the first insurance claim are either mold, rot, or deterioration. (Docs. 18-1, p. 26; 18-4, p. 9).

5

result of the loss, not the cause of the loss." (Doc. 25, p. 11). In comparison, State Farm argues item 2 is broader than item 1 because there is no ensuing loss provision. State Farm supports their position by pointing to the extensive examples of mold losses that are not covered.

The Rental Dwelling Policy is unambiguous that there is no coverage for losses that would not have occurred but for the presence of mold, even if other causes contributed to the loss. Therefore, the Court rejects the Torabis' argument that because the losses were caused by a sudden and accidental water leak the resulting mold damage is covered. Even if a covered loss may have caused the mold, losses like testing for mold and removing molded baseboards are excluded because they would not have been incurred but for the presence of mold.

### C. Rot and Deterioration Exclusion

State Farm argues that rot and deterioration are both excluded from coverage under the Rental Dwelling Policy. The policy states

> We do not insure for loss to the property described in Coverage A and Coverage B either consisting of, or directly and immediately caused by, one or more of the following: . . . j. rust, mold, or wet or dry rot . . . . However, we do insure for any ensuing loss from items a. through n. unless the loss is itself a Loss Not Insured by this Section.

(Doc. 3, p. 18). State Farm interprets the clause to state that ensuing, covered losses from rot and deterioration are covered, but rot and deterioration themselves are not covered. In other words, a covered loss caused by an uncovered loss, such as rot or deterioration, is still covered. However, if the uncovered loss causes an ensuing loss that is itself listed in items a. through n., this loss is not covered.

The Torabis interpret the ensuing loss clause in the policy to mean that rot and deterioration are covered if they ensue from a covered loss. According to their argument, the rot and deterioration at issue should be covered because they were the result of a sudden and accidental

6

water loss, which is covered under the policy.

Although the Court is aware of no Arkansas case considering the meaning of an ensuing loss clause, several other courts have addressed this issue. The Torabis cite *Aetna Casualty & Surety Co. v. Yates* to support their argument that rot and deterioration are covered under the ensuing loss clause. 344 F.2d 939, 941 (5th Cir. 1965) ("A likely case for application of the clause would be if water used in extinguishing a fire or coming from a burst pipe flooded the house and in turn caused rust or rot; loss from rust or rot so caused would be a loss ensuing on water damage."). However, the ensuing loss clause in *Yates* is different from the clause at issue here because the *Yates* policy directly stated "[e]xclusions [for rot and deterioration] shall not apply to ensuing loss caused by . . . water damage . . . provided such losses would otherwise be covered under this policy." *Id.*

Several courts have construed similar ensuing loss provisions in favor of State Farm. In *McDonald v. State Farm Fire & Casualty Co.*, the Supreme Court of Washington interpreted an almost identical ensuing loss provision. 837 P.2d 1000, 1005 (Wash. 1992). The court stated, "[r]easonably interpreted, the ensuing loss clause says that if one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered. The uncovered event itself, however, is never covered." *Id.* State Farm also cites *Schloss v. Cincinnati Insurance Co.*, where an Alabama district court stated "the ensuing loss clause means that if a specified uncovered loss occurs, here rot, then a separate loss which follows as a result of the specified, uncovered loss which would otherwise be covered remains covered." 54 F. Supp. 2d 1090, 1094–95 (M.D. Ala. 1999). The plaintiff in *Schloss* made a similar argument to the Torabis that rot was covered because it ensued from water intrusion, but the losses themselves were not caused by rot. The court rejected this argument in part because it "renders the ensuing loss

7

provision meaningless." *Id.* at 1096.

From the plain language of the policy, State Farm's interpretation of the ensuing loss clause is correct. The clause at issue here states that State Farm "insure[s] for any ensuing loss *from* items a. through n. unless the loss is itself a Loss Not Insured by this Section." (emphasis added). The use of "from" establishes that the ensuing loss clause covers items that result from one of the exclusions. However, the ensuing loss clause does not apply if the ensuing loss "is itself a Loss Not Insured by this Section." The ensuing loss provision does not provide coverage for rot and deterioration, which on the record on summary judgment is the only loss giving rise to the Torabis' claim apart from mold.

### III.  Conclusion

IT IS THEREFORE ORDERED that State Farm's motion (Doc. 18) for summary judgment is GRANTED. Moe and Shahla Torabis' cross motion (Doc. 25) for summary judgment is DENIED. Judgment will be entered accordingly.

IT IS FURTHER ORDERED that this case and case 5:19-CV-05227 are DECONSOLIDATED and all filing related to the claims pending in case 5:19-CV-05227 will now be made in that case.

IT IS SO ORDERED this 21st day of January, 2021.

*/s/ P. K. Holmes, III*
P.K. HOLMES, III
U.S. DISTRICT JUDGE